FEDERICO DIJOLS, Petitioner, v. ANDRÉS A. LUGO, WARDEN OF THE DISTRICT JAIL OF SAN JUAN, Respondent.

No. 127. Argued February 5, 1941.—Decided February 6, 1941.

*Federico Dijols, pro se. George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Federico Dijols filed a petition for a writ of habeas corpus in this Court. As it was not sworn and the petitioner was in jail, the warden of the jail was ordered to bring the petitioner to the office of the clerk of this Court so that he could comply with that requisite. He complied, the writ was issued and the hearing set for yesterday afternoon. The warden with the petitioner, and the prosecuting attorney, appeared at the hearing. The warden presented his return and the petitioner testified and offered record No. 8330 of this Court in evidence, The People of Puerto Rico v. Federico Dijols, for a violation of Act No. 45 of 1932 (it should be Act No. 43). The petitioner spoke. The prosecuting attorney rendered his report. The petitioner replied, and the case was submitted to the court's consideration.

From the petition and the warden's return it appears that petitioner is detained by virtue of a judgment rendered against him by the District Court of Bayamón on January 26, 1940, sentencing him to four months in jail for a violation of Act No. 43 of 1932, and from the record of case No. 8330 it appears that after defendant had appealed to this Court, the appeal was dismissed on November 6, 1940, for lack of prosecution.

In the petition it is alleged:

"*Fourth:* That when the District Court of Bayamón, P. R. rendered judgment against the petitioner, said court acted without jurisdiction over the person of the petitioner.

"*Fifth:* That the petitioner is not guilty of said offense because at no moment did the evidence for The People prove that the petitioner represented himself as or acted as an attorney, and this is borne out by the transcript of the record which has been filed in the office of the Clerk of this Court.

"*Sixth:* That neither during the trial of this case nor when judgment was rendered was the petitioner informed by the court of his constitutional right to be assisted by counsel.

"*Seventh:* That the sentence imposed by the District Court of Bayamón is null and void, because it was imposed in violation of the Organic Act of Puerto Rico and especially of Section 141 of the Code of Criminal Procedure in force in Puerto Rico."

From the record No. 8330, it appears that the complaint, which gave rise to this prosecution reads, in its relevant part, as follows:

"I, Benicio Sánchez Castaño, file complaint against Federico Dijols, . . . That on December 19, 1938, and in Comerío, P. R., . . . Federico Dijols, then and there, illegally, wilfully and criminally, violated the provisions of Section 12 of Act No. 45 of May 14, 1932, 'To provide for the organization of the Bar Association of Porto Rico; to specify its functions and duties, and for other purposes,' as it has been amended; because without having been duly admitted and licensed to act as a lawyer, he tried to represent himself and did represent himself as a lawyer in active practice, preparing the complaint and other pleadings in the case of Sidelio Rivera, plaintiff *v.* Juan Vilches, defendant, for collection of money, Civ. No. 250 of the Municipal Court of Bayamón, knowing that he was not such a lawyer and was not authorized to act as a lawyer."

The evidence for The People, according to the transcript of the evidence, was in short, the following:

Sidelio Rivera, a merchant of Comerío, testified that defendant went to his store and asked him if he had any accounts to collect. He answered that he had the account of Juan Vilches. He gave it to him and on the following day defendant brought the complaint and he signed it and gave him $5.00 to file it. He does not know who drew it. He gave $9.00 to Antonio Román Benítez, a lawyer who went with the defendant to see him and who talked to him about continuing the prosecution of the suit.

Providencia Cortés, Deputy Clerk of the Municipal Court of Bayamón, stated that the complaint of *Rivera* v. *Vilches,* for collection of money, signed by Rivera, was filed by the defendant; that "at the last moment a lawyer, Román Benítez, presented himself with a document which authorized him to act as attorney in the case;" that defendant never

told her that he was a lawyer, nor has he signed any documents as a lawyer nor has he appeared in court as a lawyer; that she does not know who drew the complaint and that Antonio Román Benítez was the attorney in the case.

Manuel Torres Reyes, an attorney, knows the defendant and when asked: "Do you know in what he occupies himself?" he answered: "Well, I have seen him performing odd jobs in court. Specifically, I don't know the profession to which he devotes himself. With respect to this case (that of *Rivera* v. *Vilches*) on a certain occasion he went to my office and talked to me about the case and about the complaint filed by Sidelio Rivera against Vilches; he asked me whether I wished to intervene in the case; on that occasion we did not come to an agreement; later—the day when the trial was going to be held—he asked me to take over .the case; I then asked him who had drawn the complaint and he told me that he had prepared it."

Later he added: "Specifically, I know of three or four cases. First there was this case. And the second case refers to the foreclosure of a mortgage in which the defendant was a widow of Comerío, Josefa Díaz, if I remember correctly. In that case Mrs. Díaz came with Mr. Dijols to my office and gave me $13.00 in order to take certain steps and Mr. Dijols told me that he knew of a certain document that could invalidate said foreclosure of the mortgage and he brought the document to my office."

Luis Feliú, Marshal of the Municipal Court of Bayamón stated with respect to the case of *Rivera* v. *Vilches*: "I do not recollect the exact day, but Mr. Dijols went in representation of the plaintiff to the Ward Palomas in order to identify a yoke of oxen which was going to be attached." Defendant did not tell him that he was a lawyer, but he gave him the necessary documents.

Once the evidence for The People was presented, the defendant requested the court to acquit him and the court "denied said motion for nonsuit".

Guido Umpierre, José Santiago González and José María Pérez then testified for the defendant. Umpierre, stenographer of the District Attorney of Bayamón, stated that he had taken a certain deposition of José Santiago González and when defendant tried to offer it in evidence, the district attorney objected, the court upholding his objection; Santiago González testified that he knew the defendant and Sidelio Rivera and that he had testified before the district attorney. He was not allowed to say what he had testified. Certain documents were shown to him and he replied that Sidelio and he had prepared them without the defendant intervening at all in this matter but limited himself to bringing them to court; that the witness is a bookkeeper; that Sidelio went to his office; that they had obtained a model complaint and had filled the blank spaces. José María Pérez testified that he had called the defendant "to instruct him to consult a lawyer and take steps to collect a certain account of money, and that after ten or twelve days he brought Attorney Torres to me to take steps for the collection of the account".

The district attorney then called Sidelio Rivera, who ratified what had been testified alreay with respect to the complaint in the action against Vilches and who explained that the complaint which he drew with Santiago González was another one which he had brought against José María Santiago. The district attorney called anew Attorney Manuel Torres Reyes. Torres Reyes, referring to the case of Rivera v. Vilches, said that defendant had stated to him that "he had drawn the complaint and that a certain defect in the same had to be corrected."

The defendant then presented as his last witness Edelmiro Mercado, Insular Policeman, who testified that Antonio Román Benítez went to Comerío and saw the defendant, giving him some money.

The defendant insisted that he should be acquitted but the court found him guilty of the offense with which he was charged, that is, the offense defined and punished by Section 12 of "An Act to provide for the organization of the Bar Association of Porto Rico; to specify its functions and duties, and for other purposes", (Act No. 43 of 1932, pp. 522, 528), which reads as follows:

"Every person who, without having been duly admitted or licensed to practice the profession as provided in this Act, or who during the suspension of such license practices as a person qualified therefor, or who announces himself as such, or who tries to lead others to believe that he is a practising attorney, shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than one hundred (100) dollars or imprisoned for not less than two (2) months, or shall suffer both penalties."

Nothing appears in a positive manner from record No. 8330 with respect to what happened in the trial held in the District Court of Bayamón in regard to the defense of the accused by a lawyer, but defendant, as petitioner in this habeas corpus proceeding, testified:

"Petitioner's allegation is based on the fact that petitioner was indicted in the District Court of Bayamón and the trial was held on January 25, 1939. The People appeared through its attorney but the petitioner could not obtain an attorney. While I was looking for an attorney, the judge was telling the attorneys that they should not serve me. He was saying that to Attorney Fournier and to Attorney Jusino. The district attorney interested himself in my defense. I found myself defenseless and Fournier said to me: 'Dijols, yours is a case in which there is no evidence.' Fifteen days before I had paid Víctor Gutiérrez Franqui for my defense and he sent with me a motion to Mr. Benicio Sánchez so that he would sign it, and a letter asking permission to go to court to defend me. I took the letter and together with it the motion to postpone the trial. We left things that way. Víctor Gutiérrez Franqui forgot about it and I appeared before the District Court of Bayamón alone and without a lawyer. I tried to defend myself because Attorney Fulgencio Piñero had given me some ideas and I continued to defend myself alone, the case having been appealed to the Supreme Court . . . I ap-

peared in court and tried to take steps to obtain a lawyer to defend me. I tried to obtain Víctor Gutiérrez Franqui, Jusino, Attorney Piñero, Fournier and even Leopoldo Santiago and while I tried to induce them to defend me they decided that nobody should undertake my defense. The judge did not permit them to defend me.''

The testimony of the petitioner is not worthy of credit in all its parts. In our opinion it goes too far in its charges, but weighing it in relation to what appears from record No. 8330, it is entirely clear to us that the true situation is that the district court did not acquire jurisdiction to try the petitioner in accordance with the law when it failed to inform him of his right to be assisted by counsel and to appoint one to represent him, in spite of the fact that a good number of them were in court.

The prosecuting attorney called our attention to the able manner in which the defendant conducted himself during the trial, examining witnesses, formulating objections, taking exceptions and finally requesting that he be peremptorily acquitted. That is true. However, the information filed against him, the statute which he is alleged to have violated and the evidence presented against him speak for themselves in an eloquent manner as to the necessity in a case of this kind for the intervention of a lawyer and as to how different the final outcome of this case could have been through the intervention in favor of the defendant of an educated mind, skilled in the law and jurisprudence.

As it appears clearly from the record that the court did not warn defendant of his right, that he was not represented by an attorney and that he did not waive his right to be represented, this case falls within the scope of the decision of the Supreme Court of the United States in *Johnson* v. *Zerbst,* 304 U.S. 458, and within the scope of the decisions of this Supreme Court in *Ex parte Hernández,* 54 P.R.R. 396; *People* v. *Rivera,* 54 P.R.R. 581; *People* v. *Correa,* 54 P.R.R. 755; *People* v. *Mercado,* 54 P.R.R. 859; *People* v. *Rodríguez,*

54 D.P.R. 1004 (per curiam decision not published in the English edition); *People* v. *Santana,* 55 P.R.R. 231; *Ex parte Oropesa,* 55 P.R.R. 274; *Ex parte Rodríguez,* 55 P.R.R. 403; *Ex parte Resto,* 55 P.R.R. 700; *People* v. *Delestre,* 55 D.P.R. 1000 (per curiam decision not published in the English edition) and *People* v. *Muriel,* 57 P.R.R. ____.

If on any occasion the bar association and the local attorneys, especially those who were in court the day of the trial, as well as the trial judge, should have taken care that the defendant be assisted by the best possible legal defense, it was on this occasion in which a citizen was charged with unlawful practice as an attorney. The profession at that moment should have shown itself in all its grandeur and yet it did not do so.

Every attorney on being admitted by this Court to the practice of his noble profession swears: ''I will counsel and maintain only such actions, proceedings, and defenses as appear to me legally debatable and just, except the defense of a person charged with a public offense.'' And he adds: ''I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, nor delay any man's cause for lucre or malice.''

The oath goes so far that it exempts the defense of all those persons charged with the commission of a crime from that previous detailed investigation which as a general rule should be made of its legal merits before a representation is assumed in any other cases, and the disinterested conduct that should be followed when the defense of the oppressed and the downtrodden is concerned, is reaffirmed when said defense is placed above the personal interest of the attorney.

The freedom of the petitioner must be and is hereby decreed.